IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARI BOYER, MARC KATZEN and )
MARSHALL KATZEN, )
 )
            Plaintiffs, )
 )
      v. )            Civil No. 3:19-152
 )            Judge Stephanie L. Haines
CLEARFIELD COUNTY INDUSTRIAL )
DEVELOPMENT AUTHORITY, FRANK )
A. VILLELLA, C WAREHOUSE LLC, )
JOSEPH A. VARACALLO, )
DEVELOPAC, INC., M &T BANK and )
WILMINGTON TRUST, N.A., )
 )
            Defendants. )

## OPINION AND ORDER OF COURT

This is an action involving claims related to the issuance of industrial development bonds

by Defendant Clearfield County Industrial Development Authority ("IDA") in 1986 to finance the

development of 75,000 square feet of warehouse space ("Project Facility") on property owned by

Defendant Frank A. Villella in Sandy Township, Clearfield County.  The estimated cost of the

project was $1,350,000 with $1,100,000 to be financed by the IDA.  The transaction provided for

the appointment of a paying agent to pay principal, interest and contingent interest on the bonds to

Bari Boyer, Marc Katzen and Marshall Katzen ("Plaintiffs" or "Bondholders").  Defendant M&T

Bank has succeeded Deposit Bank as the paying agent.  Plaintiffs allege that Defendant

Wilmington Trust, N.A., acts as M&T Bank's agent in connection with the investment of funds in

trust for the direct payment of interest to the Bondholders.

Presently before the Court are four separate motions to dismiss Plaintiffs' Second

Amended Complaint ("SAC") [Doc. 51] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed

by Defendants M&T Bank and Wilmington Trust [Doc. 53]; Defendants C Warehouse LLC,

1

Joseph A. Varacallo and Developac, Inc. [Doc. 56]; Defendant Frank Villella [Doc. 58]; and, Defendant Clearfield County IDA [Doc. 61].   Plaintiffs have filed an omnibus response in opposition to all motions to dismiss [Doc. 68].   Defendants M&T Bank and Wilmington Trust filed a reply to Plaintiffs' omnibus response to their motion to dismiss [Doc. 71], to which Plaintiffs filed a sur-reply [Doc. 74].

## I.   <u>Introduction</u>

### A.   <u>Background</u>

The bond transaction at issue includes: a Debt Resolution [Doc. 51-1] passed by the IDA which authorized the issuance of Bonds to finance the warehouse project; the issuance of Bonds [Docs. 51-2 to 51-6] to the Bondholders, payable from revenue derived from the Project Facility, and which are structured to include the payment of additional contingent rental interest and additional contingent appreciation interest;[1] and, a Mortgage Loan Agreement [Docs. 51-7 and 51-8] entered into by the IDA, Frank Villella and Deposit Bank (predecessor to M&T Bank as paying agent), which memorializes Frank Villella's payment obligations, as well as the responsibilities of M&T Bank as paying agent to enforce those obligations for the benefit of the Bondholders.

The Bondholders allege that Frank Villella, in collaboration with Joseph Varacallo and Developac, has engaged in a scheme to deprive the Bondholders of additional contingent rental

---

[1] As asserted in the SAC, the bonds are structured to provide minimum interest of 8.25% for the full term until maturation of the bonds on December 30, 2019, plus two forms of contingent interest: (1) additional contingent <u>rental</u> interest of 25% of the gross rental income generated by the facility in excess of $112,500 each calendar year for the first 15 years, then 50% in excess of $112,500 each calendar year for the final 18 years to maturity; and, (2) additional contingent <u>appreciation</u> interest of 50% of the amount by which the appraised value of the project facility exceeds $1,350,000 at the date of bond maturity [Doc. 51 ¶¶ 20-21].   For purposes of additional contingent appreciation interest, the fair market value of the facility is to be determined by the average of two appraisals, one to be prepared by an appraiser selected by Villella and one to be prepared by an appraiser selected by the paying agent, M&T Bank [Doc. 51 ¶ 23].

interest by fraudulently concealing and diverting rental revenue to Defendant C Warehouse as a straw party, and by failing to accurately report the revenue generated by the Project Facility.

Pursuant to the alleged scheme, Villella and C Warehouse entered a lease with option to purchase for the Project Facility in 2004 [Doc. 51-13]. The 2004 Lease was executed by Varacallo as President of C Warehouse, and identified Developpac as Frank Villella's broker for purposes of negotiating the lease. The annual rent for the Project Facility under the 2004 Lease is $112,500, which is exactly equal to the threshold amount beyond which the Bondholders' right to additional contingent rental interest would be triggered, and with no provision in that lease for any rental increase at any time. Plaintiffs allege that the current rental value for warehouse space in the area is double or triple the amount of rent that C Warehouse is paying under the 2004 Lease, and that the lease was designed to enable the unlawful diversion of rent and revenue to C Warehouse.

Plaintiffs further assert that C Warehouse subsequently entered a sub-lease for the Project Facility with Domtar Paper Company ("Domtar Lease"). Under the Domtar Lease, C Warehouse receives fair market rent for the Project Facility from Domtar far in excess of $112,500, which then is diverted to Villella or for his benefit. Plaintiffs allege that Villella and Varacallo structured the 2004 Lease, using C Warehouse as a strawman, so as to obscure the actual revenue generated by the Project Facility, and to deprive the Bondholders of the additional contingent rental interest to which they are entitled under the Domtar Lease. Plaintiffs assert that Villella refuses to produce the Domtar Lease or any other information related to revenue generated by the Project Facility beyond that generated under the 2004 Lease with C Warehouse.

Plaintiffs also allege that Villella is suppressing the amount of additional contingent appreciation interest due to the Bondholders by refusing to provide information by which M&T Bank's appraiser can make an accurate appraisal of the Project Facility. Villella's selected

appraiser has prepared an appraisal identifying the fair market value of the facility at $1,050,000, which is below the threshold that would trigger the Bondholders' right to additional contingent appreciation interest.   Plaintiffs allege that Villella's appraisal contains errors and was prepared pursuant to restrictions placed by Villella and Varacallo on what the appraiser could consider, in order to suppress the fair market value of the Project Facility, which Plaintiffs believe far exceeds the threshold for additional contingent appreciation interest, at the expense of the Bondholders.

**B.    Procedural History**

Plaintiffs filed their initial complaint on September 24, 2019 [Doc. 1], and a First Amended Complaint on November 13, 2019 [Doc. 28].   The currently operative SAC was filed on January 10, 2020 [Doc. 51].   The SAC advances the following claims:

- Breach of Contract (*Bondholders v. Villella*) [Count I]
- Tortious Interference with Contract (*Bondholders v. Villella, C Warehouse, Developac and Varacallo*) [Count II]
- Unjust Enrichment (*Bondholders v. Villella, C Warehouse, Developac and Varacallo*) [Count III]
- Conspiracy (*Bondholders v. Villella and Varacallo*) [Count IV]
- Breach of Contract (*Bondholders v. IDA*) [Count V]
- Breach of Contract (*Bondholders v. IDA and M&T Bank*) [Count VI]
- Breach of Fiduciary Duty (*Bondholders v. M&T Bank*) [Count VII]

The SAC also contains a section entitled "Injunctive Relief Allegations" [Doc. 51 ¶¶ 125-133], as well as a Prayer for Relief [Doc. 51 pp. 23-24].

On June 10, 2020, Plaintiffs filed a related complaint in a separate action naming Joyce Villella as the sole defendant [Doc. 1 at Civil Docket Case No. 3:20cv111].[2]   An answer to that complaint was filed by Joyce Villella on July 8, 2020 [Doc. 5 at No. 3:20cv111].   On July 20,

---

[2]   On February 26, 2021, the Court granted the parties' joint motion to substitute Frank A. Villella, as Executor of the Estate of Joyce Villella, as a named Defendant in this action in place of Joyce Villella, who unfortunately now is deceased [Doc. 89].

2020, the Court granted the parties' joint motion to consolidate the two cases [Doc. 77 at No. 3:19cv152; Doc. 7 at No. 3:20cv111].[3]

The related complaint alleges that Joyce Villella, who was Frank Villella's wife and a member of C Warehouse, engaged in a conspiracy to deprive the Bondholders of additional contingent rental interest and additional contingent appreciation interest to which they are entitled under the Bonds issued by the IDA in 1986. The complaint against Joyce Villella advances claims for Tortious Interference with Contract [Count I]; Unjust Enrichment [Count II]; and, Conspiracy [Count III], along with equitable relief allegations and a prayer for relief [Doc. 1 at Civil Docket Case No. 3:20cv111].

## II.   **Standard**

To survive a motion to dismiss, a pleading must set forth "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In this regard, legal conclusions must be supported by factual allegations. *Id.*; *see also Burtch*

---

[3] Pursuant to the consolidation order, the operative documents at Civil Docket Case No. 3:20cv111 (*i.e.*, the complaint and answer) were incorporated into the action at Civil Docket Case No. 3:19cv152, and the action at Civil Docket Case No. 3:20cv111 was closed, with all documents going forward directed to be filed in this pending action at Civil Docket Case No. 3:19cv152 [Doc. 77 at No. 3:19cv152].

*v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth"). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

At the final step, the court is to assume all well-pled factual allegations to be true, construe those allegations in the light most favorable to the pleading party, and draw all reasonable inferences from them in favor of the pleading party. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016).

## III.   <u>Analysis</u>

### A.   <u>Frank Villella [Doc. 58]</u>

The SAC advances four claims against Frank Villella: breach of contract (Count I); tortious interference with contract (Count II); unjust enrichment (Count III); and, conspiracy (Count IV). Villella has moved to dismiss Counts II, III and IV, as well as the prayer for punitive damages relief and the injunctive relief allegations set forth in the SAC.

#### 1.   <u>Count II: Tortious Interference with Contract</u>

Count II of the SAC alleges that Villella and Varacallo, as an agent of C Warehouse and Developac, intentionally interfered with the contractual obligations of the IDA and M&T Bank under the Debt Resolution and the Bonds to pay to the Bondholders all amounts to which they are entitled, including additional contingent rental interest and additional contingent appreciation interest.

Under Pennsylvania law, in order to state a claim for the tort of intentional interference with an existing or prospective contractual relation, a plaintiff must plead the following elements: (1) the existence of a contractual, or prospective contractual, relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring[4]; (3) the absence of privilege or justification on the part of the defendant[5]; and, (4) the occasioning of actual legal damage as a result of the defendant's conduct. *See Pittsburgh Logistics Systems, Inc. v. Cox Logistics LLC*, Civil No. 20-817, 2021 WL 811394, at * 8 (W.D. Pa. March 3, 2021) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997).

Here, the SAC alleges a contractual relation between the Bondholders and the IDA and M&T Bank under the terms of the Debt Resolution and the Bonds, which obligates the payment of interest, including additional contingent rental interest and additional contingent appreciation interest. The SAC further alleges that Villella was aware of that contractual relation and its terms, and that he improperly interfered with the contractual obligations of the IDA and M&T Bank to pay such contingent interest through purposeful conduct, including structuring the 2004 Lease with C Warehouse as a strawman in an effort to obscure the actual rental revenue being generated under the Domtar Lease, and refusing to provide information to M&T Bank's appraiser in an effort to suppress the appraised value of the Project Facility. Finally, the SAC alleges that Villella's

---

[4]   To establish the necessary purposeful action intended to harm an existing contractual relation, the law requires that the defendant have knowledge of the contract, and that he is interfering with the performance of that contract. *Pittsburgh Logistics*, 2021 WL 2021 WL 811394, at * 8 (citing *East-West Arts & Entertainment Group, Inc. v. DeYoung*, Civ. No. 90-2521, 1994 WL 379154, at *13 (E.D. Pa. July 11, 1994)); *see also* Restatement (Second) of Torts § 766 cmt. i (1979)

[5]   As to this third element, a plaintiff must plead and prove that the "defendant's actions were *improper* under the circumstances presented." *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (2009); Restatement (Second) of Torts § 767 (1979).

interference with the contract between the Bondholders and the IDA and M&T Bank has resulted in damages to the Bondholders by depriving them of the additional contingent rental interest and additional contingent appreciation interest to which they are entitled under the Debt Resolution and the Bonds.

Assuming these allegations to be true, and construing them in the light most favorable to the Bondholders as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs have stated a plausible claim against Villella for the tort of intentional interference with a contract at Count II of the SAC.

Villella, however, argues that Count II should be dismissed under the "gist of the action" doctrine because the intentional interference claim merely recasts as a tort claim Plaintiffs' claim against him for breaching his contractual obligations as alleged in Count I. In a similar vein, Villella argues that he cannot tortiously interfere with a contract to which he is a party. *See, e.g.,* *Daniel Adams Assocs., Inc. v. Rimbach Publ'g., Inc.*, 360 Pa.Super. 72, 519 A.2d 997, 1000 (1987) ("Essential to a right of recovery [for tortious interference with a contract] is the existence of a contractual relationship between the plaintiff and a 'third person' other than the defendant."). These arguments miss the mark.

The gist of the action doctrine provides that "an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *Earl v. NVR, Inc.*, 990 F.3d 310, 315 (3d Cir. 2021) (quoting *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 106 A.3d 48, 53 (2014) (footnotes omitted)). At its core, the Pennsylvania "gist of the action" doctrine prevents plaintiffs from recasting ordinary breach of contract claims as tort claims.

*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 591 (W.D. Pa. 2019). "The nature of the allegedly breached duty is the decisive factor—if the duty would not exist without the contract, then the claim sounds in contract alone." *Id.* (citing *Bruno*, 106 A.3d at 68).

Here, however, the gist of the action doctrine does not apply because the gravamen of the tort claim set forth at Count II is <u>not</u> the alleged violation of Villella's contractual obligations to the Bondholders as third-party beneficiaries under the Mortgage Loan Agreement, but instead is his intentional interference with the contractual obligations of the IDA and M&T Bank under the Debt Resolution and the Bonds. Villella is not a party to either the Debt Resolution or the Bonds, and neither the Debt Resolution nor the Bonds create any direct contractual relationship between the Bondholders and Villella.

Although Villella contends that the Debt Resolution was issued for him as the Investor Developer/Lessor, that does not make him a party to that contract. Indeed, Section 19 of the Debt Resolution explicitly provides that it is to be deemed a contract between the IDA and the Bondholders [Doc. 51-1 p. 7]. Likewise, the Bonds create a direct contractual relationship between the IDA and the Bondholders for the payment of interest and contingent interest. It is the contractual obligations of the IDA and M&T Bank under the Debt Resolution and the Bonds with which Plaintiffs allege Villella tortiously interfered. Because Villella is not a party to the Debt Resolution or the Bonds, the contract with which he allegedly interfered is not his own contract, and the gist of the action doctrine does not preclude Plaintiffs' claim that he tortiously interfered with the obligations of the IDA and M&T Bank owed to Plaintiffs under those contracts.

Villella further argues that the claim for tortious interference with contract should be dismissed because Plaintiffs have failed to allege that he *induced* the IDA or M&T Bank to breach

their duties to Plaintiffs under the Debt Resolution and Bonds.  However, as the Restatement (Second) of Torts makes clear, inducement is but one means to interfere with a contract.

The tort of intentional interference with existing contractual relationships is governed by section 766 of the Restatement (Second) of Torts, which was adopted by the Pennsylvania Supreme Court in *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978).  *Walnut St. Assocs.*, 982 A.2d at 97–98.  Section 766 provides as follows:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing <u>or otherwise causing</u> the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979) (emphasis added).

The comments to § 766 make clear that the rule "applies to <u>any</u> intentional causation whether by inducement <u>or otherwise</u>."  Restatement (Second) of Torts § 766 cmt. h (emphasis added).  "The essential thing is the intent to cause the result."  *Id*.  Thus, "[i]t is not necessary to show that the third party was induced to break the contract."  Restatement (Second) of Torts § 766, cmt. k.  Rather, "[i]nterference with the third party's performance may be by <u>prevention</u> of the performance, as by physical force, by depriving him of the means of performance or by misdirecting the performance, as by giving him the wrong orders or information."  *Id*.  (emphasis added).

Here, the SAC is replete with allegations that Villella <u>caused</u> the IDA and M&T Bank to not perform their contractual obligations to pay additional contingent rental and appreciation interest under the Debt Resolution and Bonds by, *inter alia*, structuring the 2004 Lease with C Warehouse as a strawman in an effort to obscure the actual rental revenue being generated under the Domtar Lease, and by refusing to provide information to M&T Bank's appraiser in an effort

to suppress the appraised value of the Project Facility.  These allegations that Villella improperly prevented the IDA and M&T Bank from performing their contractual obligations, if believed, are sufficient to state a claim for the tort of intentional interference with a contract under Section 766 and Pennsylvania law.

Accordingly, Plaintiffs' claim against Villella for tortious interference with contract as set forth in Count II of the SAC may proceed.

### 2.    Count III: Unjust Enrichment

Count III of the SAC advances a claim of unjust enrichment against Villella.  Specifically, Plaintiffs allege that to the extent Villella has received any "commission, fee, payment or any portion of revenues" generated by the Project Facility in excess of the threshold amount triggering the Bondholders' entitlement to additional contingent rental interest, he has "wrongfully secured or passively received" a benefit in the form of amounts due and owing to the Bondholders [Doc. 51 ¶ 90].

In order to state a claim for unjust enrichment under applicable Pennsylvania law, a plaintiff must plead the existence of "'[1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'"  *Pittsburgh Logistics*, 2021 WL 811394, *6 (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).  "The most important factor . . . is whether the enrichment of the defendant is *unjust*."  *Walter v. Magee–Womens Hosp.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005) (quoting *Schenck*, 666 A.2d at 328).  Whether an enrichment is unjust is a factual question

to be determined on a case-by-case basis. *Holtec Int'l v. ARC Machines, Inc.*, 492 F. Supp. 3d 430, 443 (W.D. Pa. 2020).

Here, the SAC alleges that rental income from the Domtar Lease has been improperly diverted to C Warehouse, and then on to Villella, Varacallo and Developac, either in the form of direct payments of rental income, or commissions, fees or other payments.   It is further alleged that this diversion of rental income has prevented the IDA and M&T Bank from distributing additional contingent rental interest to the Bondholders, and that the Defendants are receiving an unjust benefit in the form of funds that properly are due and owing to the Bondholders as additional contingent rental interest.

Assuming these allegations to be true, and construing them in the light most favorable to the Bondholders as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs have stated a plausible claim of unjust enrichment against Villella at Count III of the SAC.

Nevertheless, Villella seeks dismissal of Count III on two grounds.   First, he argues that a plaintiff can only bring a claim for unjust enrichment if the underlying contractual documents between the parties are unenforceable. *See Cosby v. Am. Media, Inc.*, 197 F. Supp. 3d 735, 745 (E.D. Pa. 2016).   Villella is correct that the "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract." *Harris v. Homecomings Fin. Serv., Inc.*, 377 F. App'x. 240, 244 (3d Cir. 2010) (quoting *Benefit Trust Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985)). *See also Bral Corp. v. Johnstown Am. Corp.*, 919 F. Supp. 2d 599, 620 (W.D. Pa. 2013).

However, the relationship between Villella and the Bondholders at the heart of the unjust enrichment claim is not founded on a direct contract between those two parties. Rather, the contract at issue at Count III is the Mortgage Loan Agreement between Villella and M&T Bank, as the agent of the IDA, to which the Bondholders are third party beneficiaries. And a third-party beneficiary to a contract, like the Bondholders, may bring an unjust enrichment claim when the defendant has "received and retained a benefit" from the plaintiff "which would be unjust to retain" without some payment to the plaintiff. *Holtec*, 492 F. Supp. 3d at 443 (citing *Bigler Boyz Enviro, Inc. v. Clean Fuels of Indiana, Inc.*, No. 3:19-170, 2020 WL 1929424, at *4 (W.D. Pa. Apr. 21, 2020)).

As already discussed, the SAC alleges that Villella has received and retained a benefit, in the form of the additional contingent rental interest payments that properly are due to the Bondholders, and that it would be unjust for Villella to retain that benefit without payment. These allegations are sufficient to state a plausible claim of unjust enrichment against Villella.

Villella also argues that the SAC fails to allege that a benefit has been conferred on him by the Plaintiffs. However, while a successful claim of unjust enrichment requires that a plaintiff "confer benefits on a defendant; it does not require that [the] plaintiff 'directly confer' those benefits." *Bral*, 919 F. Supp. 2d at 620; *see also Century Indem. Co. v. URS Corp.*, Civ. A. No. 08–5006, 2009 WL 2446990, at *5 (E.D. Pa. Aug. 7, 2009) (quoting *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006)).

Again, the Bondholders have sufficiently pled facts to plausibly establish that Villella has been unjustly enriched at the expense of the Bondholders. The facts as alleged in the SAC, if true, could permit a jury to conclude that Villella's receipt and retention of benefits in the form of

payments that rightfully should have been paid to the Bondholders as additional contingent rental interest was unjust.

Accordingly, Plaintiffs' claim against Villella for unjust enrichment as set forth in Count III of the SAC may proceed.

### 3. Count IV: Conspiracy

Count IV of the SAC alleges that Villella has conspired with Varacallo to tortiously interfere with the Bondholders' rights under the Bonds and the Debt Resolution.

Under Pennsylvania law, a civil conspiracy claim has three elements: (1) a combination of two or more persons acting with a common purpose to accomplish an unlawful act or lawful act by unlawful means; (2) an overt act done to further that purpose; and, (3) actual legal damage. *Revzip, LLC v. McDonnell*, No. 3:19-cv-191, 2020 WL 1929523, * 11 (W.D. Pa. April 21, 2020) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)).

Here, the SAC alleges that Villella and Varacallo have engaged in a scheme to wrongfully deprive the Bondholders of their right to the payment of additional contingent rental interest and additional contingent appreciation interest. The SAC further alleges that the conspirators engaged in overt acts in furtherance of the scheme, including structuring the 2004 Lease with C Warehouse as a strawman in an effort to obscure the actual rental revenue being generated under the Domtar Lease, and by refusing to provide information to the Bank's appraiser in an effort to suppress the appraised value of the Project Facility. Finally, the SAC alleges that the Plaintiffs have suffered actual damages in the form of lost additional contingent rental interest and additional contingent appreciation interest.

Assuming these allegations to be true, and construing them in the light most favorable to the Bondholders as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs have stated a plausible claim of civil conspiracy against Villella at Count IV of the SAC.

Villella's sole argument in support of the dismissal of Count IV is tied to his argument that Plaintiffs have failed to state a claim of tortious interference with contract at Count II.  Because the Court has determined that Plaintiffs' tortious interference with contract claim may proceed, there is no basis to dismiss Count IV on Villella's asserted ground, or on any other ground. Accordingly, Plaintiffs' claim against Villella for civil conspiracy as set forth in Count IV of the SAC may proceed.

      4.   <u>Punitive Damages</u>

Plaintiffs seek punitive damages under both Counts II and IV of the SAC [Doc. 51 ¶¶ 87 and 95].  In both counts, they allege that the Defendants' actions demonstrate "willful, wanton, reckless and outrageous conduct" justifying an award of punitive damages.  Villella has moved to dismiss the punitive damages request on two grounds.

First, he argues that Plaintiffs have failed to state a claim upon which relief can be granted at either Count II or Count IV, and therefore the punitive damages request must be dismissed because such damages are not available for breach of contract. *N'Jai v. Bentz*, No. CIV. A. 13-1212, 2015 WL 5123691, at *3 (W.D. Pa. Sept. 1, 2015) (punitive damages cannot be recovered for the breach of a contract in Pennsylvania); *see also Ash v. Contil Ins. Co.,* 593 Pa. 523, 932 A.2d 877, 881 (Pa. 2007) (Pennsylvania law typically only provides for punitive damages in tort actions).   As the Court already has found that Plaintiffs have stated plausible tort claims for

intentional interference with contract and civil conspiracy, Villella's first argument for dismissal of the punitive damages request likewise fails.

Next, Villella argues that the allegations set forth in the SAC are conclusory and are not the "stuff" of punitive damages, which are warranted only for instances of outrageous conduct. Instead, Villella contends, this is merely a dispute over actions taken or not taken under somewhat complicated transactional documents with no evil intent.

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchinson ex rel. Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (Pa. 2005) (citation omitted). It is well-settled that punitive damages are "penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.* When assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Id.* (quoting *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 748 (Pa. 1984)).

"Because the question of whether punitive damages are proper often turns on the defendant's state of mind, this question frequently cannot be resolved on the pleadings alone, but must await the development of a full factual record at trial." *De Oca v. Beato*, No. 3:17-CV-837, 2018 WL 3371920, at *7 (M.D. Pa. June 6, 2018), *report and recommendation adopted*, No. 3:17-CV-837, 2018 WL 3370561 (M.D. Pa. July 10, 2018) (citing *In re Lemington Home for the Aged*, 777 F.3d 620, 631 (3d Cir. 2015). Therefore, where a plaintiff's right to punitive damages may turn on the significance afforded to disputed factual questions, a defendant is not entitled to a judgment in its favor on a plaintiff's punitive damages claim as a matter of law at the outset of the litigation. *Id.*

Here, the SAC alleges that Villella has tortiously prevented the IDA and M&T Bank from performing their contractual obligations and has engaged in an unlawful scheme with Varacallo to deprive the Bondholders of their right to additional contingent rental interest and additional contingent appreciation interest. Accepting these allegations as true, resolution of the question of whether Villella's conduct was willful, wanton or reckless, and outrageous enough to warrant an award of punitive damages, is premature at this stage of the litigation. Accordingly, Villella's motion to dismiss the punitive damages allegations of the SAC will be denied.

### 5. Injunctive Relief

Villella also moves to dismiss the Injunctive Relief Allegations set forth in ¶¶ 125-133 of the SAC, as well as any request for injunctive relief set forth in the SAC's Prayer for Relief. The Court will address together in Part III.E of this Opinion all challenges by all Defendants related to the Injunctive Relief Allegations and Prayer for Relief.

### B. Varacallo, C Warehouse and Developac [Doc. 56]

The SAC advances three claims against Joseph Varacallo: tortious interference with contract (Count II); unjust enrichment (Count III); and, conspiracy (Count IV). Defendants C Warehouse and Developac also are named in Counts II and III. These three defendants move to dismiss all of those claims, as well any claim for any type of equitable relief requested in the SAC.

### 1. Count II – Tortious Interference

Count II of the SAC raises a claim of intentional interference with contract against Villella, Varacallo, C Warehouse and Developac. The Court already has found that the SAC states a plausible claim for this tort against Villella. Upon review, the Court likewise finds that the SAC

states a plausible claim for tortious interference with contract against Varacallo, C Warehouse and Developac.

Count II of the SAC alleges that Developac and C Warehouse, through Varacallo serving as their agent, were aware of the obligations of the IDA and M&T Bank to the Bondholders under the terms of the Debt Resolution and the Bonds. It further alleges that the conduct of Varacallo, along with Villella, was intended to prevent the IDA and M&T Bank from performing their obligations under the Debt Resolution and Bonds to pay the Bondholders for all amounts to which they are entitled, including all additional contingent rental interest and additional contingent appreciation interest to which they are entitled. It is alleged that Varacallo, individually and as agent for C Warehouse and Developac, lacks any privilege to interfere with the obligations of the IDA and M&T Bank under the Debt Resolution and Bonds, and that as a result of the tortious interference with those obligations by Varacallo, along with Villella, the Plaintiffs have suffered damages. Finally, the SAC alleges that Varacallo is personally liable for all damages suffered by the Bondholders as a result of the IDA's failure to make payments of additional contingent rental interest and additional contingent appreciation interest.

Assuming these allegations to be true, and construing them in the light most favorable to the Bondholders as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs also have stated a plausible claim of tortious interference with contract against Varacallo, C Warehouse and Developac at Count II of the SAC. *See Pittsburgh Logistics*, 2021 WL 2021 WL 811394, at * 8 (setting forth elements of tortious interference with contract claim under Pennsylvania law).

C Warehouse and Developac move to dismiss Count II on the ground that there are no allegations that they interfered with any contract or intended to cause harm to Plaintiffs, and that

the allegation that Varacallo was the agent of C Warehouse and Developac is insufficient to impute Varacallo's actions to them. However, the SAC does more than merely assert Varacallo was acting as agent of those entities. Instead, the SAC alleges that C Warehouse entered into the 2004 Lease with Villella, and that the lease was executed by Varacallo as President of C Warehouse. The SAC further alleges that the 2004 Lease identifies Developac as Villella's broker for purposes of negotiating that lease. Moreover, the SAC alleges that C Warehouse entered into the Domtar Lease for the Project Facility.

Count II specifically alleges that Villella, with the cooperation of Varacallo and Developac, used C Warehouse as a straw party to carry out their scheme to deprive the Bondholders of additional contingent interest. In furtherance of the scheme, it is alleged that C Warehouse has received fair market value for the Project Facility under the Domtar Lease, and diverts the excess rent to Villella, Varacallo and Developac. The Court is satisfied that these allegations, assumed to be true and taken in the light most favorable to the Plaintiffs, are sufficient to state a plausible claim of tortious interference with a contract against both C Warehouse and Developac, as well as Varacallo and Villella.

Varacallo, C Warehouse and Developac next argue that Count II should be dismissed because it fails to allege that any of these three defendants "induced" the IDA and the Bank to breach their obligations under the Debt Resolution and Bonds. However, as already discussed, it is not necessary to show that a third party was induced to break the contract. Restatement (Second) of Torts § 766 cmts. h and k. Rather, interference may be by preventing performance. *Id.*

Here, the SAC is replete with allegations that Varacallo, C Warehouse and Developac caused the IDA and M&T Bank to not perform their contractual obligations to pay additional

contingent rental and appreciation interest under the Debt Resolution and Bonds by, *inter alia*, structuring the 2004 Lease with C Warehouse as a strawman in an effort to obscure the actual rental revenue being generated under the Domtar Lease, and by refusing to provide information to M&T Bank's appraiser in an effort to suppress the appraised value of the Project Facility. These allegations that Varacallo, C Warehouse and Developac engaged in a scheme to prevent the IDA and M&T Bank from performing their contractual obligations, if believed, are sufficient to state a claim for the tort of intentional interference with contract under Section 766 of the Restatement (Second) of Torts and Pennsylvania law against all three of these Defendants.

Accordingly, Plaintiffs' claim against Varacallo, C Warehouse and Developac for tortious interference with contract as set forth in Count II of the SAC may proceed.

### 2.      Count III – Unjust Enrichment

Count III of the SAC raises a claim of unjust enrichment against Varacallo, C Warehouse and Developac. Specifically, Count III alleges that as a result of the diversion of rental payments from Domtar to C Warehouse, C Warehouse wrongfully has secured or passively received a benefit in the form of the additional contingent rental interest due to the Bondholders under the Debt Resolution and Bonds. In addition, Count III alleges that to the extent Developac and Varacallo have received any commission, fee, payment or portion of any of the revenues generated by the Project Facility in excess of the threshold amount of additional contingent rental interest, they have received a benefit in the form of amounts properly due to the Bondholders.

Assuming these allegations to be true, and construing them in the light most favorable to the Bondholders as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs have stated a plausible claim of unjust enrichment against Varacallo, C Warehouse and

Developac at Count III of the SAC. *See Pittsburgh Logistics*, 2021 WL 2021 WL 811394, at * 6 (setting forth elements of unjust enrichment claim under Pennsylvania law).

As did Villella, Defendants Varacallo, C Warehouse and Developac argue that Count III should be dismissed because Plaintiffs have failed to allege that they have conferred any benefit on these defendants. However, as already discussed, a successful claim of unjust enrichment does not require that the Plaintiffs <u>directly</u> confer such benefits on the defendants. *See Bral*, 919 F. Supp. 2d at 620.

As with their allegations against Villella, the Bondholders have sufficiently pled facts to plausibly establish that Varacallo, C Warehouse and Developac have been unjustly enriched at the expense of the Bondholders. The facts as alleged in the SAC, if true, could permit a jury to conclude that those Defendants' receipt and retention of benefits, in the form of payments that rightfully should have been paid to the Bondholders as additional contingent rental interest, was unjust, and such allegations are sufficient to state a plausible claim of unjust enrichment.

Accordingly, Plaintiffs' unjust enrichment claim against Varacallo, C Warehouse and Developac as set forth in Count III of the SAC likewise may proceed.

3. <u>Count IV – Conspiracy</u>

Count IV of the SAC raises a claim of conspiracy against Frank Villella and Varacallo. As already discussed, the SAC alleges that Villella and Varacallo have engaged in a scheme to wrongfully deprive the Bondholders of their right to the payment of additional contingent rental interest and additional contingent appreciation interest. The SAC further alleges that Villella and Varacallo engaged in overt acts in furtherance of the scheme, including structuring the 2004 Lease with C Warehouse as a strawman in an effort to obscure the actual rental revenue being generated

under the Domtar Lease, and by refusing to provide information to M&T Bank's appraiser in an effort to suppress the appraised value of the Project Facility. Finally, the SAC alleges that the Plaintiffs have suffered actual damages in the form of lost additional contingent rental interest and additional contingent appreciation interest.

Again, assuming these allegations to be true, and construing them in the light most favorable to the Bondholders as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs have stated a plausible claim of civil conspiracy against both Villella and Varacallo at Count IV of the SAC.

Varacallo's first argument in support of dismissal of the conspiracy claim echoes that made by Villella. Varacallo likewise argues that Plaintiffs cannot state a tortious interference claim against Villella, the claim upon which the conspiracy claim is predicated, because Villella cannot tortiously interfere with his own contract, and, therefore, Plaintiffs cannot state a claim alleging that Varacallo conspired with Villella to interfere with such a contract. This argument is precluded by the Court's finding that Plaintiffs in fact have stated a plausible tortious interference claim against Villella for interfering with the contractual obligations of the IDA and M&T Bank under the Debt Resolution and the Bonds.

Varacallo further argues that Plaintiffs cannot make out the elements of a conspiracy claim. First, he argues that Plaintiffs have not set forth any facts showing that he entered into any type of agreement with Villella. He also argues that Plaintiffs have failed to allege that he engaged in any overt act in furtherance of any unlawful conduct. However, as already discussed, the SAC sets forth facts as to each of the three elements of civil conspiracy under Pennsylvania law sufficient to state a plausible conspiracy claim. The SAC alleges that Villella and Varacallo acted with a common purpose to commit an unlawful act or a lawful act by unlawful means, that they

committed numerous overt acts to further that purpose, and that Plaintiffs suffered legal damage as a result. *Revzip*, 2020 WL 1929523, * 11. The specific facts alleged in support of those three elements have already been laid out by the Court on multiple occasions in this Opinion and need not be reiterated. Plaintiffs are not required to prove those allegations at this stage. Rather, those allegations are to be accepted as true and, viewing them in a light most favorable to the Bondholders, the Court is satisfied that they are sufficient to state a plausible claim of civil conspiracy under Pennsylvania law against Villella and Varacallo.

Accordingly, Plaintiffs' claim against Villella and Varacallo for civil conspiracy as set forth in Count IV of the SAC may proceed.

### 4. Equitable Relief

Varacallo, C Warehouse and Developac also move to dismiss Plaintiffs' requests for injunctive relief and for an accounting. As noted, the Court will address together in Part III.E of this Opinion all challenges by all Defendants related to the Injunctive Relief Allegations and/or Prayer for Relief.

## C. Clearfield County IDA [Doc. 61]

The SAC advances two breach of contract claims against the IDA (Counts V and VI), which are not challenged at this stage. The IDA has moved, however, to dismiss all of the injunctive relief allegations set forth in the SAC. The Court will address in Part III.E of this Opinion the IDA's challenges to the injunctive relief allegations of the SAC together with the other challenges related to those allegations raised by the other Defendants.

**D.     M&T Bank and Wilmington Trust [Doc. 53]**

The SAC advances two claims against M&T Bank: breach of contract (Count VI) and breach of fiduciary duty (Count VII).  Although not explicitly named in those counts, Plaintiffs allege in the SAC that Wilmington Trust acts as M&T Bank's agent in connection with the investment of funds in trust for the direct payment of interest to the Bondholders [Doc. 51 ¶ 17].  M&T Bank seeks dismissal of Count VII of the SAC as well as the injunctive relief allegations set forth in the SAC.  Wilmington Trust seeks dismissal from this suit entirely.

1.     Count VII – Breach of Fiduciary Duty

Count VII of the SAC raises a claim of breach of fiduciary duty against M&T Bank. Specifically, the Bondholders allege that M&T Bank "owes a fiduciary obligation to the Bondholders to protect, manage and preserve the rights of the Bondholders in revenues generated by the Project Facility, the funds created under the Mortgage Loan Agreement, and the collateral, security interests and liens created pursuant to the Bond Transaction" [Doc. 51 ¶ 121].  The SAC further alleges that the Bank breached its fiduciary obligations to the Bondholders "as a consequence of the failure to protect the rights of the Bondholders," that M&T Bank's actions constitute gross negligence and willful misconduct, and that the Bondholders have incurred damages as a result of that breach [*Id.* ¶¶ 122-124].

M&T Bank argues that this claim is barred by the "gist of the action" doctrine because the only duties owed by the Bank to the Bondholders stem directly from the contracts entered into between M&T Bank, the Bondholders, Frank Villella and the IDA.  Accordingly, M&T Bank argues that the breach of fiduciary duty claim set forth in Count VII is nothing but a rehash of the breach of contract claim set forth in Count VI and must be dismissed.  Conversely, Plaintiffs argue

that a fiduciary relationship exists between the Bondholders and M&T Bank, and that this fiduciary relationship imposes additional common-law obligations on M&T Bank to protect and preserve the Bondholders' rights, separate and apart from any contractual obligations.

Under Pennsylvania law, a plaintiff asserting a claim for breach of fiduciary duty must plead the following elements: (1) the existence of a fiduciary relationship; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters or which he or she was employed; (3) that the plaintiff suffered injury; and (4) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries. *Truefit Sols., Inc. v. Bodies Done Right, LLC*, No. CV 19-145, 2019 WL 7187406, at *6 (W.D. Pa. Dec. 26, 2019).

Thus, in order to state a claim for breach of fiduciary duty under Pennsylvania law, a plaintiff first must plead facts indicating that a fiduciary or confidential relationship existed between the plaintiff and the defendant. *USG Ins. Servs., Inc. v. Bacon*, No. 2:16-CV-01024, 2016 WL 6901332, at *6 (W.D. Pa. Nov. 22, 2016). In contrast to an ordinary arm's-length relationship, where each party owes the other only a duty of good faith and fair dealing, a fiduciary "must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage." *Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 611 (W.D. Pa. 2013) (quoting *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759, 763 (Pa. 1971)).

Here, the Bondholders allege that a fiduciary relationship exists between them and M&T Bank which imposes additional obligations on the Bank to protect the rights of the Bondholders that are separate from their contractual duties. In particular, they allege that M&T Bank owes a

fiduciary duty to the Bondholders to "protect, manage and preserve" the rights of the Bondholders related to the revenue generated by the Project Facility.

In support, Plaintiffs rely on *Becker v. Bank of New York Mellon Tr. Co., N.A.*, 172 F. Supp. 3d 777 (E.D. Pa. 2016), in which the court held that the defendant bank, as an indenture trustee, owed actionable common law fiduciary duties to the plaintiff bondholders under Pennsylvania law. The *Becker* Court recognized that Pennsylvania law imposes upon trustees certain common law duties arising from the nature of the fiduciary relationship, and that "'[t]he primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal.'" *Becker*, 172 F. Supp. 3d at 789 (citing *In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. Ct. 2010)). Moreover, Pennsylvania law further holds that an indenture trustee stands "in a fiduciary relation to the bondholders," and, therefore, the bank, as trustee "was bound to exercise the utmost good faith in dealing with them and with the property of the trust; its first obligation was to safeguard their interests." *Id.* at 789-90 (quoting *Land Title Bank & Trust Co. v. Baron*, 341 Pa. 241, 19 A.2d 62, 66 (1941)).

Attempting to distinguish *Becker*, M&T Bank argues that they are not a trustee for the Bondholders, but instead merely serve as the Paying Agent under the terms of the Mortgage Loan Agreement. This is semantics. Under Pennsylvania law, a fiduciary relationship may be shown by demonstrating the existence of a relationship ordinarily known to be fiduciary as a matter of law, such as that between a "trustee and [beneficiary], guardian and ward, attorney and client, and principal and agent." *Reginella*, 949 F. Supp. 2d at 611 (quoting *Leedom v. Palmer,* 274 Pa. 22, 117 A. 410, 412 (1922)). Thus, Plaintiffs' allegations, if believed, are sufficient to plausibly state

the fiduciary relationship element of a breach of fiduciary duty claim under Pennsylvania law, whether that relationship is classified as trustee/beneficiary or principal/agent.[6]

In any event, Pennsylvania law also allows a fiduciary relationship to be established as a matter "of fact to be decided by evidence." *Id.* The "disparity in position between the parties" is the key factor in determining whether a fiduciary-in-fact relationship developed between parties in an otherwise arm's-length business relationship. *Reginella*, 949 F. Supp. 2d at 611 (citing *Weir by Gasper v. Ciao*, 521 Pa. 491, 556 A.2d 819, 825 (1989)). Clearly, whether a fiduciary relationship exists "as a matter of fact to be decided by evidence" cannot be decided in a motion to dismiss for failure to state a claim.

Thus, whether M&T Bank is acting as a "trustee" or as a "mere paying agent" is of no matter at this stage of the proceedings. To survive M&T Bank's motion to dismiss, Plaintiffs do not have to establish that there is a fiduciary relationship, but only must allege sufficient facts to make that element plausible. Plaintiffs' allegations that they are in a fiduciary relationship with M&T Bank which imposes common law duties to "protect, manage and preserve" the rights of the Bondholders related to the revenue generated by the Project Facility beyond the duties owed under the terms of the transaction documents, if believed, are sufficient to plausibly meet the first element of a breach of fiduciary duty claim under Pennsylvania law.

Assuming to be true the allegations that a fiduciary relationship exists, along with the additional allegations that M&T Bank breached those fiduciary obligations, resulting in damages

---

[6] As Plaintiffs aptly note in their sur-reply, M&T Bank's position that they are mere paying agents and not trustees is somewhat undermined by the Bank's identification of itself as "successor trustee" in a bond registration table contained in two of the Bonds attached to the SAC [Doc. 51-2 p.10; Doc. 51-3 p. 10]. For purposes of this motion to dismiss, however, the issue is whether the allegations are sufficient to plead the existence of a fiduciary relationship, regardless of the classification of that relationship.

to Plaintiffs, and construing all of those allegations in the light most favorable to the Bondholders

as the pleading party, *Connelly*, 809 F.3d at 791, the Court is satisfied that Plaintiffs have stated a

plausible claim of breach of fiduciary duty against M&T Bank at Count VII.

Moreover, the Court is satisfied that this claim is not subject to dismissal under the gist of

the action doctrine at this stage.  As previously discussed, the gist of the action doctrine provides

that "an alleged tort claim against a party to a contract, based on the party's actions undertaken in

the course of carrying out a contractual agreement, is barred when the gist or gravamen of the

cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against

the party for breach of its contractual obligations."  *Earl*, 990 F.3d. at 315 (quoting *Bruno*, 106

A.3d at 53).

In *Bruno*, the Pennsylvania Supreme Court established the following test for applying the

gist of the action:

> If the facts of a particular claim establish that the duty breached is one created by
> the parties by the terms of their contract—*i.e.*, a specific promise to do something
> that a party would not ordinarily have been obligated to do but for the existence of
> the contract—then the claim is to be viewed as one for breach of contract. If,
> however, the facts establish that the claim involves the defendant's violation of a
> broader social duty owed to all individuals, which is imposed by the law of torts
> and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (citations omitted).

Here, Plaintiffs allege that their breach of fiduciary duty claim is predicated on M&T

Bank's violation of a broader duty imposed by common law that arises from the fiduciary

relationship existing between the Bondholders and the Bank, and that this duty exists regardless

of any other obligations of the Bank imposed under the Mortgage Loan Agreement and Bonds.

While there may be some overlap between the Bondholders' breach of contract and breach of

fiduciary duty claims against M&T Bank, the Court is satisfied that the Bondholders' breach of

fiduciary duty claim states enough distinct facts to give it a legal basis separate and apart from the contractual relationship between the parties. Accordingly, the Court concludes that Plaintiffs' breach of fiduciary claim as pled against M&T Bank is not precluded as a legal matter by the gist of the action doctrine. *See, e.g., USG Ins. Servs., Inc. v. Bacon*, No. 2:16-CV-01024, 2016 WL 6901332, at *9 (W.D. Pa. Nov. 22, 2016).

The Court further observes that the Third Circuit has stated that the "[a]pplication of [the gist of the action] doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims." *Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013). Accordingly, district courts in this Circuit commonly allow contract and tort claims to simultaneously proceed into discovery and defer evaluating a gist of the action challenge until the summary judgment stage if necessary. *Apple Am. Grp., LLC v. GBC Design, Inc.*, 294 F. Supp. 3d 414, 424 (W.D. Pa. 2018).

Because Plaintiffs have pled a plausible claim of breach of fiduciary duty under Pennsylvania law, and this claim is not barred by the gist of the action doctrine at this stage of the litigation, Plaintiffs' claim against M&T Bank for breach of fiduciary duty as set forth in Count VII of the SAC may proceed.

   2.   Injunctive Relief

M&T Bank also moves to dismiss the "Injunctive Relief Allegations" section of the SAC pursuant to Rule 12(b)(6) "to the extent this is being asserted as a cause of action." Again, the Court will address in Section III.E of this Opinion all challenges by all Defendants to the Injunctive Relief Allegations.

3.   Wilmington Trust

Wilmington Trust moves for its dismissal from this action entirely because there are no pled facts supporting any claim against it. The Court agrees that the dismissal of Wilmington Trust is warranted. The only mention of Wilmington Trust in the entire SAC is Plaintiffs' allegation that Wilmington Trust acts as M&T Bank's agent in connection with the investment of funds in trust for the direct payment of interest to the Bondholders [Doc. 51 ¶ 17]. Beyond that, Wilmington Trust is not named as a defendant in any of the seven counts of the SAC and is not a party to any of the contracts or transactions at issue. Nor does the SAC plead any specific act or omission by Wilmington Trust which might subject it to any sort of tort liability.

The mere allegation that Wilmington Trust is acting as M&T Bank's agent in connection with the investment of funds for the payment of interest to the Bondholders is insufficient to justify Wilmington Trust's continued inclusion in this lawsuit. As already noted, Wilmington Trust is not a party to any of the contracts involved in this litigation, and, "'[i]t is a basic tenet of agency law that an individual acting as an agent for a disclosed principal is not personally liable on a contract between the principal and a third party unless the agent specifically agrees to assume liability.'" *Azarchi-Steinhauser v. Protective Life Ins. Co.*, 629 F. Supp. 2d 495, 499–500 (E.D. Pa. 2009) (quoting *Vernon D. Cox & Co., Inc. v. Giles,* 267 Pa. Super. 411, 406 A.2d 1107, 1110 (1979)).[7]

Nor are the allegations in the SAC sufficient to state any claim for which Wilmington Trust might be liable in tort for M&T Bank's alleged breach of fiduciary duty. It is a hornbook principle

---

[7] A principal is disclosed if the third party has notice that the agent is acting for a principal and has notice of the principal's identity. *See* Restatement (Second) of Agency § 4(1); *Azarchi-Steinhauser*, 629 F. Supp. 2d at 500.

of agency law that an agent is liable in tort to a third party for his <u>own</u> tortious conduct <u>only</u>. *Schwartz v. Hilton Hotels Corp.*, 639 F. Supp. 2d 467, 472–73 (D.N.J. 2009). It logically follows that an agent is "not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of '*respondeat inferior*.' " Restatement (Third) of Agency § 7.01 cmt. d (2006); *see also Speer v. Taira Lynn Marine, Ltd.*, 116 F. Supp. 2d 826, 830 (S.D. Tex. 2000) ("There is no such thing as *respondeat inferior*" ).

Thus, Plaintiff's mere assertion that Wilmington Trust is acting as M&T Bank's agent, without any specific allegation that Wilmington Trust itself breached any contract or committed any tort, fails to state any claim upon which relief can be granted against Wilmington Trust.

Nevertheless, Plaintiffs argue that Wilmington Trust should not be dismissed from the case because Wilmington Trust is in active concert or participation with M&T Bank, and thus the dismissal of Wilmington Trust would adversely affect Plaintiffs' ability to obtain an injunction against it. However, Wilmington Trust's principal, M&T Bank, remains a party to this action. Should the Court ultimately determine that injunctive relief is available against M&T Bank, Wilmington Trust would be bound by that injunction to the extent it in fact is acting as M&T Bank's agent, as Federal Rule of Civil Procedure 65(d)(2)(B) expressly provides that an injunction against a party also binds that party's agents who receive actual notice of it. Accordingly, Plaintiffs' concerns are unfounded.

Because the SAC fails to state any claim upon which relief can be granted against Wilmington Trust, Wilmington Trust will be dismissed from this action.

E.      **Challenges to Injunctive Relief Allegations and Prayer for Relief**

The SAC contains a section entitled "Injunctive Relief Allegations." In this section, Plaintiffs allege that Villella has refused to produce information regarding the revenues generated by the Project Facility beyond the C Warehouse lease. They further allege that M&T Bank and the IDA have failed to take any action to enforce Villella's obligation to produce that information, and have taken no steps to ensure Villella's compliance with his payment obligations. Thus, in order to ensure that the interests of the Bondholders are protected in light of Villella's conduct, Plaintiffs assert that M&T Bank and the IDA must be compelled to declare Villella in default of his obligations under the Mortgage Loan Agreement, to take immediate action to enforce Villella's reporting obligations, and to take action to enforce Villella's payment obligations, including the commencement of a foreclosure action [Doc. 51 ¶¶ 125-133].

The SAC's Prayer for Relief [Doc. 51 pp. 23-24] also requests injunctive relief precluding M&T Bank and the IDA from releasing any lien on the collateral pledged by Villella so long as he is in default of his reporting and payment obligations under the Mortgage Loan Agreement, and precluding M&T Bank from releasing any funds derived from the Project Facility to Villella and imposing a constructive trust for the benefit of the Bondholders.

The Prayer for Relief also requests other types of equitable relief including the imposition of a constructive trust; an order directing Villella, Varacallo, C Warehouse and Developac to provide all information required to be provided under the Mortgage Loan Agreement, or, alternatively, directing M&T Bank and the IDA to take action to compel the production of such information by Villella; an order directing Villella to cause an appropriate appraisal of the Project Facility; and, an order directing an accounting to determine the full extent of the rental income

received by Villella and his agents, associates and/or entities under his ownership or control, including C Warehouse.

Initially, all Defendants have moved for the dismissal of the Injunctive Relief Allegations of the SAC under the principle that a party cannot bring a separate cause of action for injunctive relief, because an injunction is a form of relief, not a claim. The Defendants are correct that an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary. *See, e.g., Chruby v. Kowaleski*, 534 F. App'x 156, 160 n. 2 (3d Cir. 2013) (citing *Birdman v. Office of the Governor*, 677 F.3d 167, 172 (3d Cir. 2012)). However, because the Injunctive Relief Allegations of the SAC, by their nature, cannot be read to plead a cause of action under the very principle upon which the Defendants rely, these allegations likewise cannot be the proper subject of a Rule 12(b)(6) motion, which goes to the question of whether a plaintiff has failed to state a <u>claim</u> upon which relief can be granted. Instead, the Injunctive Relief Allegations must be construed as what they actually have to be – a request for equitable <u>relief</u>.

Moreover, the Court finds no basis to dismiss any request for relief at this stage of the proceedings. The Federal Rules of Civil Procedure require that a pleading contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). The prayer for relief is not determinative of the sufficiency of a complaint, and any deficiency in the prayer is best cured by amendment, prior to or during trial. *See, e.g., Etienne v. Oyake*, 347 F. Supp. 2d 215, 220 (D.V.I. 2004).

Rule 8(a)(3) merely requires that a pleading contain "a demand for the relief sought." Here, the Court finds that both the Injunctive Relief Allegations and the Prayer for Relief request proper forms of relief that may be demanded under Rule 8(a)(3) for the claims set forth in the SAC. Plaintiffs' properly pled causes of action are broad enough to encompass each type of relief

requested. *See, e.g., Brogan v. Tunkhannock Twp.*, No. 3:14-CV-1690, 2015 WL 5028812, at *5 (M.D. Pa. Aug. 19, 2015) (declining to strike any part of a prayer for relief).

Thus, while not expressing an opinion as to whether Plaintiffs ultimately may be entitled to each, or any, of the aforementioned categories of damages, the Court nevertheless is not inclined to dismiss either the Injunctive Relief Allegations or any part of Plaintiffs' Prayer for Relief because a determination of what damages are, or may be, available to Plaintiffs cannot be made at this time. *See Brogan*, 2015 WL 5028812, at *5.

Defendants Villella and the IDA further assert that the Injunctive Relief Allegations should be dismissed because Plaintiffs have failed to establish that they are entitled to injunctive relief. In response, Plaintiffs assert that they have sufficiently alleged all of the factors[8] necessary to entitle them to such relief.

The Court will not dismiss the Injunctive Relief Allegations in the SAC on the ground that Plaintiffs have not *established* the necessary factors entitling them to such relief. As an initial matter, while Villella and the IDA both argue that Plaintiffs are not entitled to a preliminary injunction, Plaintiffs have not filed a motion for preliminary injunctive relief under Rule 65(a) of the Federal Rules of Civil Procedure. Although Plaintiffs asked the Court to grant "preliminary and permanent injunctive relief" in Count VIII of their now defunct First Amended Complaint [Doc. 28], the operative SAC makes no reference to *preliminary* injunctive relief in either the

---

[8] "In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and, (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001). There is no significant difference between the standards for a preliminary injunction and those for a permanent injunction. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

Injunctive Relief Allegations or the Prayer for Relief [Doc. 23]. Thus, the issue of Plaintiffs'
entitlement to a preliminary injunction is not properly before the Court.

Moreover, it is far too premature to make a determination as to whether Plaintiffs ultimately
may be entitled to permanent injunctive relief, or any other relief, at this stage of the litigation.
Plaintiffs have pled allegations in the SAC which, if accepted, plausibly may entitle them to
injunctive relief. There is no basis to dismiss those allegations at this time, nor to make a
determination as to whether the standards for injunctive relief have been met. Again, these are not
issues properly raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which
relief can be granted, or in a response thereto.

Finally, to the extent Varacallo, C Warehouse and Developpac seek dismissal of Plaintiffs'
request for an accounting in the Prayer for Relief, their motion to dismiss will be denied. An
equitable accounting is a remedy that is available under Pennsylvania law where the available legal
remedy is not "adequate or complete." *Global Arena, LLC v. Eterpreting, LLC*, No. CV 16-3634,
2016 WL 7156396, at *2 (E.D. Pa. Dec. 8, 2016) (citing *Williams v. Finlaw, Mueller & Co.*, 141
A. 47, 48 (Pa. 1928)). Thus a prayer for an accounting, like a request for injunctive relief, is not a
cause of action or a claim upon which relief can be granted. Rather, it is a request for another form
of equitable relief, *i.e.*, a "demand for judgment for the relief the pleader seeks" under Rule 8(a)(3)
of the Federal Rules of Civil Procedure. As such, it too is not the proper subject of a Rule 12(b)(6)
motion. *Global Arena, LLC*, 2016 WL 7156396, at *2; *see also Bontkowski v. Smith*, 305 F.3d
757, 762 (7th Cir. 2002).

## IV.   <u>Conclusion</u>

Under the standards set forth in *Twombly* and *Iqbal*, a complaint need only set forth
sufficient facts to state a claim to relief that is plausible on its face and allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.   Here, the SAC sets forth sufficient facts to state plausible claims for tortious interference with contract and unjust enrichment against Villella, Varacallo, C Warehouse and Developac.   It also states a plausible claim for conspiracy against Villella and Varacallo.   Because the SAC sets forth plausible tort claims, the Plaintiffs' request for punitive damages also survives the Defendants' motions to dismiss.

As to the Bank Defendants, the SAC states a plausible claim against M&T Bank for breach of fiduciary duty, and that claim is not barred by the gist of the action doctrine.   The SAC, however, fails to state any claim against Wilmington Trust, and Wilmington Trust will be dismissed as a defendant in this action.

Finally, as to the Defendants' challenges to the Injunctive Relief Allegations and the Prayer for Relief as set forth in the SAC, there is no basis to dismiss any request for relief at this stage of the proceedings.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| BARI BOYER, MARC KATZEN and MARSHALL KATZEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 3:19-152 |
| | ) | Judge Stephanie L. Haines |
| CLEARFIELD COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, FRANK A. VILLELLA, C WAREHOUSE LLC, JOSEPH A. VARACALLA, DEVELOPAC, INC., M &T BANK, and WILMINGTON TRUST, N.A., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER OF COURT

AND NOW, this _11th_ day of June, 2021, for the reasons set forth in the Opinion above, IT IS ORDERED that the partial motion to dismiss filed by Defendants M&T Bank and Wilmington Trust N.A. [Doc. 53] hereby is **granted in part** and **denied in part**. To the extent Defendant Wilmington Trust N.A. seeks dismissal from this suit, the motion is **granted** and Wilmington Trust N.A. hereby is dismissed as a Defendant in this action. In all other respects, M&T Bank's partial motion to dismiss is **denied**; and,

IT FURTHER IS ORDERED that the motion to dismiss filed by Defendants Joseph A. Varacallo, C Warehouse LLC, and Developac, Inc. [Doc. 56], hereby is **denied**; and,

IT FURTHER IS ORDERED that the partial motion to dismiss filed by Defendant Frank A. Villella [Doc. 58] hereby is **denied**; and,

IT FURTHER IS ORDERED that the motion to dismiss filed by Defendant Clearfield County Industrial Development Authority [Doc. 61] hereby is **denied**; and,

IT FURTHER IS ORDERED that within 7 days of the date of this Opinion and Order, Plaintiffs shall notify the Court in writing as to whether they wish to: (a) proceed with their pending motion to amend the Second Amended Complaint [Doc. 92]; or, (b) withdraw that motion and continue with this case on the Second Amended Complaint.  Should Plaintiffs elect to proceed with their motion to amend the Second Amended Complaint, and should the Court ultimately permit the filing of a Third Amended Complaint,[9] **all parties again are advised that the Court will not revisit any issues that have been decided in this Opinion resolving the Defendants' motions to dismiss the Second Amended Complaint in any motion to dismiss a Third Amended Complaint**.


Stephanie L. Haines
United States District Judge


cc/ecf:  All counsel of record

---

[9]  Nothing in this Order should be construed as the Court expressing any opinion as to the merits of Plaintiffs' pending motion to amend the Second Amended Complaint or as indicating or suggesting what the ultimate resolution of that motion will be.