IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARI BOYER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 3:19-152 |
| ) | Judge Stephanie L. Haines |
| CLEARFIELD COUNTY INDUSTRIAL ) | |
| DEVELOPMENT AUTHORITY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# OPINION

This is an action involving claims related to the issuance of industrial development bonds by Defendant Clearfield County Industrial Development Authority ("IDA") in 1986 to finance the development of 75,000 square feet of warehouse space ("Project Facility") on property owned by Defendant Frank A. Villella in Sandy Township, Clearfield County. The estimated cost of the "C-Warehouse Project" was $1,350,000 with $1,100,000 to be financed by the IDA. The transaction provided for the appointment of Deposit Bank as a paying agent to pay principal, interest and contingent interest on the bonds to Bari Boyer, Marc Katzen and Marshall Katzen ("Plaintiffs" or "Bondholders"). Defendant M&T Bank later succeeded Deposit Bank as the paying agent.

Defendant Clearfield County IDA [Doc. 200] and Defendant M&T Bank [Doc. 203] filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 on their cross-claims for attorneys' fees against Defendant Frank Villella. M&T Bank also moved for summary judgment on Villella's cross-claim for breach of contract against M&T Bank. Defendant Frank Villella filed separate responses in opposition to the Defendants' motions [Docs. 234 and 238, respectively]. For the following reasons, the summary judgment motions of both Clearfield County and M&T Bank previously were **granted** [Doc. 288].

1

I.  **Procedural History**

Plaintiffs filed their initial complaint in this case on September 24, 2019 [Doc. 1], a First Amended Complaint on November 13, 2019 [Doc. 28], and a Second Amended Complaint ("SAC") on January 10, 2020 [Doc. 51]. On June 11, 2021 this Court entered an opinion dismissing Wilmington Trust N.A. as a defendant,[1] but otherwise denying motions to dismiss the SAC filed by all other Defendants [Doc. 110].

On February 3, 2022, this Court granted Plaintiffs' motion for leave to amend the SAC in order to add a claim for fraud [Doc. 92]. Plaintiffs then filed the currently operative Third Amended Complaint ("TAC") on February 7, 2022 [Doc. 130] advancing the following claims:

- Breach of Contract (*Bondholders v. F. Villella*) [Count I]
- Tortious Interference with Contract (*Bondholders v. F. Villella, Estate of J. Villella, C Warehouse, Developac and Varacallo*) [Count II]
- Unjust Enrichment (*Bondholders v. F. Villella, Estate of J. Villella, C Warehouse, Developac and Varacallo*) [Count III]
- Fraud *(Bondholders v. F. Villella, C Warehouse, Developac and Varacallo)* [Count IV]
- Conspiracy (*Bondholders v. F. Villella, Estate of J. Villella and Varacallo*) [Count V]
- Breach of Contract (*Bondholders v. IDA*) [Count VI]
- Breach of Contract (*Bondholders v. IDA and M&T Bank*) [Count VII]
- Breach of Fiduciary Duty (*Bondholders v. M&T Bank*) [Count VIII]

The TAC also contains a section entitled "Injunctive Relief Allegations" [Doc. 130 ¶¶ 187-196], as well as a Prayer for Relief [Id. pp. 37-38].

On February 22, 2022, M&T Bank filed an answer to Plaintiffs' TAC, along with a cross-claim asserting two counts of breach of contract against Frank Villella [Doc. 132]. On February

---

[1] Plaintiffs alleged in the SAC that Wilmington Trust was acting as M&T Bank's agent in connection with the investment of funds in trust for the direct payment of interest to the Bondholders. However, because Wilmington Trust was not named as a defendant in any of the seven counts of the SAC, was not a party to any of the contracts or transactions at issue, and because Plaintiffs failed to plead any specific act or omission by Wilmington Trust which might subject it to any sort of tort liability, the Court dismissed Wilmington Trust from the case [Doc. 110 pp. 30-31].

2

25, 2022, Frank Villella filed an answer to the TAC, along with a cross-claim for breach of contract against M&T Bank and the IDA [Doc. 135]. And on March 4, 2022, the IDA filed a cross-claim asserting a cause of action for breach of contract against Frank Villella [Doc. 139].

## II. Factual Background

On December 30, 1986, the Bondholders, Frank Villella, Deposit Bank and the IDA entered into various bond transaction documents for the financing of the C-Warehouse Project. The bond transaction documents include: a **Debt Resolution** passed by the IDA which authorized the issuance of Bonds to finance the warehouse project; the issuance of **Bonds** to the Bondholders, payable from revenue derived from the Project Facility, and which are structured to include the payment of additional contingent rental interest and additional contingent appreciation interest; and, a **Mortgage Loan Agreement ("MLA")** [Doc. 206-1 pp. 3-26] entered into by the IDA, Frank Villella and Deposit Bank,[2] which memorializes Frank Villella's payment obligations, as well as the responsibilities of M&T Bank as paying agent to enforce those obligations for the benefit of the Bondholders. The summary judgment motions of both M&T Bank and the IDA turn on the interpretation of various provisions in the Mortgage Loan Agreement.

## III. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir.

---

[2] Some time after execution of the Mortgage Loan Agreement, First Commonwealth Bank took over as paying agent from Deposit Bank. In 2007, M&T Bank purchased First Commonwealth Bank's book of business for its trust operations, which included the Bonds at issue in this case, and became Paying Agent under the Bond Transaction Documents [Doc. 206 ¶¶ 14, 15 & Exhibit C; Doc. 238 ¶¶ 14, 15].

2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Rule 56(c) "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex*, 477 U.S. at 322-23). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either citing to particular parts of materials in the record or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c).

Once the moving party satisfies its burden under Rule 56(c) that no genuine issue of material fact exists, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). However, in deciding a Rule 56 summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001). Finally, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

IV.     **Analysis**

1.     **Attorney's Fees and Costs**

Both M&T Bank and the IDA filed cross-claims against Villella for breach of contract stemming from Villella's failure to remit payment to either party for their costs and attorneys' fees. Both parties assert that Villella has refused to pay their respective attorneys' fees and costs as required under the MLA, despite their repeated requests for payment. Villella does not dispute that he has not paid the fees. Instead, he argues that he is not obligated to do so under the terms of the MLA.

In terms of allocating attorneys' fees and costs, contracting parties may structure their agreement as they choose, and such unambiguous contracts are to be enforced as they are written. *Kripp v. Kripp*, 578 Pa. 82, 849 A.2d 1159, 1163 (Pa. 2004) ("[T]he words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."). Accordingly, if the MLA is unambiguous as to payment of fees and costs, the provision must be enforced according to its plain meaning. *See Waynesborough Country Club of Chester Cnty. v. Diedrich Niles Bolton Architects, Inc.*, No. CIV. A. 07-155, 2008 WL 4916029, at *3 (E.D. Pa. Nov. 12, 2008).

In this case, the MLA contains an indemnification[3] and waiver of claim clause at Section 9.1 which reads in pertinent part as follows:

> The Investor Developer [Villella] covenants and agrees to protect, exonerate, defend, indemnify, and save harmless the Authority and the Bank . . . from and against any and all loss, damage, cost, expense, or liability arising out of or relating to any action taken in good faith by the Authority its board members, officers, agents, attorneys, or employees to carry out the terms of this Agreement and the other documents referred to herein.

---

[3] An indemnity clause holds the indemnitee harmless from liability by requiring the indemnitor to bear the cost of any damages for which the indemnitee is held liable. *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 202 (3d Cir. 1995).

[Doc. 206-1 p. 17].

Section 9.1 further provides that Villella will not resist the IDA's or M&T Bank's claim to indemnification "on the grounds that the right to such claim is not set forth herein with sufficient particularity."

In addition, Section 11.3 of the MLA provides for payment by Villella of certain expenses of the IDA and M&T Bank:

> The Investor Developer will pay all out-of-pocket expenses incurred by the Authority and the Bank in connection with the preparation of this Agreement (whether or not the transactions hereby contemplated shall be consummated), the making of the loan hereunder, and the enforcement of the rights of the Authority and the Bank in connection with this Agreement and the First Mortgage or with the loan made hereunder, including, but not limited to, the fees and disbursements of the Bank and its counsel, as well as the Bond Counsel.

[Doc. 206-1 p. 23].

The Court is satisfied that these two provisions unambiguously require Villella to pay the attorneys' fees and costs of both the IDA and M&T Bank. First, Section 9.1 clearly requires Villella "to protect, exonerate, defend, indemnify, and save harmless the Authority and the Bank … against *any and all* loss, damage, *cost, expense,* or liability" arising out of or relating to "*any action taken in good faith* … to carry out the terms of this Agreement and the other documents." In turn, Section 11.3 requires Villella to "*pay all out-of-pocket expenses incurred by the Authority and the Bank*" in connection with "the enforcement of the rights of the Authority and the Bank in connection with this Agreement and the First Mortgage or with the loan made hereunder, *including, but not limited to, the fees and disbursements of the Bank and its counsel.*"

Villella's arguments against his obligation to pay fees and costs have no merit. First, Villella argues that both 9.1 and 11.3 are ambiguous in that neither is clear that he is responsible for losses stemming from a breach of contract by the IDA and/or M&T Bank. *See Jacobs*

*Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 372 (3d Cir. 2001) (an agreement to indemnify another for his contractual liability to a third party imposes an obligation, regardless of the fault of the indemnitor, and thus must be stated plainly, in clear and unequivocal language).

The construction of an indemnity contract is a question of law for the court to decide. *Jacobs Constructors*, 264 F.3d at 371 (citing *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986)). If the indemnity clause is clear and unambiguous, then the intentions of the parties should be ascertained primarily by looking to the language used in the agreement. *Id.*, 264 F.3d at 371. (citing *See Fallon Elec. Co., Inc. v. The Cincinnati Ins. Co.*, 121 F.3d 125, 127 (3d Cir.1997)). Importantly, the mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous. *Id.* (citing *Metzger v. Clifford Realty Corp.*, 327 Pa. Super. 377, 386, 476 A.2d 1, 4 (1984)).

Here, this Court is satisfied that the MLA unambiguously requires Villella to defend and indemnify both the IDA and M&T Bank against the contractual claims raised by the Bondholders. The language in Section 9.1 prohibiting Villella from resisting his obligations "on the grounds that the right to such claim is not set forth herein with sufficient particularity" clarifies that he is responsible for defending and indemnifying the IDA and M&T Bank against <u>any</u> loss, expense or liability relating to "<u>any</u> action taken in good faith" to carry out the terms of the Bond transaction. Villella does not dispute that the actions taken by M&T Bank or the IDA for which the Bondholders seek to hold them liable were taken in order to carry out the terms of the bond transaction documents, and the Bondholders have not raised any claims of bad faith against the IDA or the Bank. Moreover, while Section 9.1 does not explicitly list claims for breach of contract, the language in that provision prohibiting Villella from resisting his obligations "on the grounds that the right to such claim is not set forth herein with sufficient particularity" sufficiently clarifies

7

that he is responsible for defending the IDA and M&T Bank for all of the claims raised by the Bondholders in Counts VI, VII and VIII of the Third Amended Complaint.

Likewise, this Court rejects Villella's argument that Section 11.3 of the MLA applies <u>solely</u> to out-of-pocket expenses incurred by the Authority and the Bank in connection with the preparation of the Loan documents. Rather, that provision unambiguously applies not only to expenses incurred in connection with the preparation of the documents, but <u>also</u> to expenses incurred related to "the enforcement of the rights of the Authority and the Bank in connection with this Agreement and the First Mortgage or with the loan."

Finally, Villella's reliance on the notice provision of Section 9.1 likewise is misplaced. Section 9.1 provides that the IDA or M&T Bank "shall give prompt notice to the Investor Developer of any claim asserted against the Authority or the Bank which, if sustained, may result in liability on the Investor Developer hereunder." However, Section 9.1 explicitly goes on to provide that "the failure on the part of the Authority or the Bank to give notice promptly *shall not relieve the Investor Developer from its obligation to protect, exonerate, defend, indemnify and save the Authority or the Bank harmless* as aforesaid . . . " [Doc. 206-1] (emphasis added). Moreover, the record establishes conclusively that Villella had actual notice of this lawsuit, and that both M&T and the IDA were parties to it.

### 2. **Failure to Provide Documents**

Next, M&T Bank moved for summary judgment on Count One of its cross-claim against Villella. At that count, M&T Bank alleges that Villella breached the terms of the MLA by failing to provide various documents which were necessary in order for M&T Bank to perform its duties as paying agent under the MLA.

8

Pursuant to Section 5.4 of the MLA, Villella was required, at his own expense, "to file financing statements in respect of the Premises and Project Facilities or any portion thereof, and [to] take any other action which may be deemed necessary by the Bank from time to time to perfect the security interest and lien created therein under this Agreement." [Doc. 206-1 p. 10]. In addition, Section 5.5 of the MLA provides:

> Until the Mortgage Loan has been repaid in full, upon written request, the Investor Developer shall deliver to the Authority and the Bank, and to each Bondholder requesting the same, within ninety (90) days after the end of each fiscal year: (a) its annual report with respect to the Project, which shall include balance sheet and income statement in reasonable detail, and its annual budget for the next fiscal year; and (b) certificate that no Event of Default hereunder has occurred and is continuing.

[*Id.*].

The record shows that on August 15, 2019, M&T Bank, through counsel made a written request via email that Villella provide:

> (a) copies of all current leases or subleases on the Project, and if Domtar is on the property, that includes the Domtar lease or sublease, (b) copies of any prior leases or subleases on the Project (since 1986), and (c) per Section 5.5(a) of the Loan Agreement, the annual report with respect to the Project for every year from 1986 to 2018, which shall include a balance sheet and income statement in reasonable detail, as well as the budget for 2019.

[Doc. 206-1 p. 61].

Identical written requests were made on October 29, 2019 [*Id.* p. 64] and on November 18, 2019 [*Id.* p. 81]. On June 13, 2023, having still not received the requested information, M&T Bank sent a letter to Villella declaring an Event of Default in accordance with Section 6.1(b) of the MLA [*Id.* pp. 85-86]. In this email, Villella was advised that he was in default of his obligations under Section 5.5(a) of the MLA, as well as in default of other provisions of the Agreement "including by failing to notify the Paying Agent of improvements made to the project facility and diverting rental income to himself when such rental income was required to be paid to

the Paying Agent, and by failing to notify the Paying Agent about various leases entered into relating to the project facility" [*Id.* at 86].

It is undisputed that Villella has never provided M&T Bank with the requested documents. At his deposition, Villella admitted that he never provided M&T Bank with notice of transfer, or notice that C Warehouse, LLC, had entered into a lease with Weyerhaeuser, nor did he ever provide the Bank with any profit and loss statements [Doc. 206-1 p. 69-73]. Instead, Villella argues that he was under no duty to provide the requested documents because Section 5.5 of the MLA only required delivery of such documents "[u]ntil the Mortgage Loan has been repaid in full." Since the mortgage loan was repaid in full in 2001, Villella contends that he is under no further obligation to provide any documents to M&T Bank.

Even accepting Villella's interpretation that his obligations under Section 5.5(a) ceased when the Mortgage Loan was repaid in full, the record still establishes as a matter of law that Villella was in breach of the MLA by failing to provide the required documents on request. First, M&T Bank's request for documents was not limited to the annual reports under Section 5.5(a), but also requested copies of all current leases or subleases on the Project, to include the Domtar lease or sublease, as well as prior copies of any prior leases or subleases on the Project. Nor was the Event of Default notice limited to a breach of Section 5.5(a). As set forth in the notice, Villella's failure to notify M&T Bank of improvements made to the project facility and his failure to notify the Bank about various leases entered into relating to the project facility likewise constituted breaches of various provisions of the MLA.

Moreover, Section 5.4 of the MLA requires Villella "to file financing statements in respect of the Premises and Project Facilities or any portion thereof, and [to] take any other action which may be deemed necessary by the Bank." As the Bank advised Villella in its written requests, these

documents would be shared with the appraiser selected by M&T for the appraisal required by the Katzen Bonds. Thus, Villella's failure to provide the requested documents, including the annual reports, at a minimum constituted a breach of his obligation under the MLA to file financing statements and to "take any other action deemed necessary by the Bank" in order that M&T Bank could fulfill its own obligations under the MLA.

Because Villella violated the MLA by failing to provide the documents when requested, M&T is entitled to summary judgment on Count One of its cross-claim against Villella.[4]

### 3. Reserve Fund

M&T Bank also moved for summary judgment on Frank Villella's cross-claim against the Bank for breach of contract. Count One of Villella's cross-claim asserts that M&T Bank breached the MLA by failing to pay to him the sum of $50,000.00 which is being held in a Reserve Fund administered in accordance with the MLA.[5] As a matter of law, M&T Bank is entitled to summary judgment on Villella's cross-claim.

The MLA contains an exculpatory clause which expressly precludes Villella from bringing its breach of contract claim against M&T Bank as Paying Agent. Section 3.6 of the MLA provides:

> Neither the Bank nor any of its officers, directors, agents, attorneys, or employees shall be liable for any action taken or omitted to be taken by it hereunder or in connection herewith except for its or their own gross negligence or willful misconduct.

[Doc. 206-1 p. 11].

---

[4] As it appears that M&T Bank has received most if not all of the requested documents through the course of this litigation from other sources, the Court cannot find that M&T Bank has suffered any damages as a result of Villella's breach of the MLA related to failure to provide the documentation as alleged in Count One of the cross-claim. If there are documents that M&T Bank has requested but not received, Villella shall provide them forthwith.

[5] On December 2, 2019, this Court entered an order approving the parties' stipulation maintaining the status quo [Doc. 38], which prohibits M&T Bank from releasing any collateral it held securing the bonds [Doc. 206 ¶ 48]. This fact is undisputed by Villella [Doc. 238 ¶ 48].

Under Pennsylvania law, exculpatory clauses immunize a party from the consequences of his or her negligent performance of a contractual obligation. *Valhal Corp., supra*, 44 F.3d at 202. It is generally accepted that an exculpatory clause is valid where three conditions are met: (1) the clause must not contravene public policy; (2) the contract must be between persons relating entirely to their own private affairs; and, (3) each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. *Topp Copy Prods., Inc. v. Singletary*, 533 Pa. 468, 471, 626 A.2d 98, 99 (1993). In addition, a valid exculpatory clause is enforceable so long as the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. *Id.*

Here, Section 3.6 of the MLA appears to meet the *Topp Copy* conditions, and Villella makes no argument to the contrary. In addition, it is clear from the plain language of the provision that M&T Bank is being relieved of liability for its own negligent acts, as it excepts liability only for gross negligence or willful misconduct. Villella makes no allegation in the cross-claim that M&T Bank was grossly negligent or committed willful misconduct in not releasing the funds from the Reserve Fund during active litigation, and in light of a Court order maintaining the status quo. As the exculpatory provision is both valid and enforceable, Villella's cross-claim against M&T Bank for breach of contract is precluded under the MLA. Accordingly, M&T Bank is entitled to summary judgment on that cross-claim.

## V.     Conclusion

For the foregoing reasons, the Court granted summary judgment in favor of both M&T Bank and the IDA on their respective cross-claims against Villella for breach of contract relating to Villella's failure to remit payment for attorney's fees and costs (Count Two of M&T Bank's Cross-Claim and Count One of the IDA's cross-claim, respectively). The Court also granted

summary judgment in favor of M&T Bank on Count One of its cross-claim against Villella for failure to produce documents, and on Count One of Villella's cross claim against M&T Bank relating to the reserve fund. A judgment order will follow.

Dated: March 26, 2025

Stephanie L. Haines
United States District Court